The next case on the calendar is United States v. Ramsey. Good morning, your honors. I'm Beverly Van Ness representing Mr. Ramsey. I've submitted over a hundred pages of briefs in this case, raising numerous points and numerous subpoints, and I can't possibly address them all. So I've picked a few that I'd like to emphasize today, and I hope that you will ask me questions about anything that strikes you. The first point I want to emphasize is the lack of any proof that Mr. Ramsey aided and abetted this murder. As you know from the Delgado case that was cited in my brief, there's two elements to accomplice liability. One is that the actor has to have the requisite intent for the crime, but also he has to do something to facilitate the crime. In this case, Mr. Ramsey was in London when the informant was murdered. There are some phone calls between the two defendants, and one phone call between Mr. Ramsey and a person named Nutt, who was allegedly in on the plan, but these calls were not recorded. We don't know what the content was. Nutt lived in Atlanta, and so he was able to, if you accept the government's theory, he was able to formulate the murder plan, but he, Ramsey was not, not only not in Atlanta, but there's no evidence that he knew anything about Atlanta. So, and again, the calls were unrecorded. And in terms of the claim by the one cooperating witness that Mr. Ramsey confessed to making sure the murder was accomplished by telling Nutt that if the co-defendant didn't kill Johnson, that Nutt should kill both Johnson and the co-defendant, doesn't get any traction in terms of sufficiency of evidence, because there's no evidence that Mr. Muschiette faltered in any way, or needed any kind of prodding. We don't even know who suggested the murder, if you accept the government's theory. So, this is very much like Delgado, but I think even weaker proof, because in Delgado, the defendant was very eager to join his gang members in killing rival gang members. His intent was clear. He went out to try to find a gun, but they went on without him, and he wasn't at the scene when the two victims were shot to death. Didn't your client admit to Braithwaite that, I mean, if this testimony was credited, that he took measures to ensure the murder would be carried out? I mean, you could say, I understand your argument about the backup plan, but in that conversation, wasn't he essentially saying, I was the instigator of this? I was the one who made the call, according to Braithwaite? Or am I misunderstanding that testimony? Well, I don't know how you can, you can only speculate about what the content of these calls were. And even if Mr. Mouchette was the one who suggested the plan, that's still consistent with Braithwaite's claim that my client confessed to making sure that it happened. And, in fact, he didn't need to make sure that it happened, because according to the government, Mouchette killed the victim without any faltering in the slightest, and didn't have to encourage him. So there's absolutely no evidence, it's not merely insufficient, there's no evidence that my client was an aider or better. The next point I want to bring up are all the points I've made about the credibility of the only eyewitness that the government presented, Anthony Braithwaite. His testimony was not rendered incredible by testimony of competing eyewitnesses, because there weren't any. His testimony was rendered incredible by undisputed forensic evidence presented by the government. The medical examiner's testimony, the ballistics evidence, cell phone records, and photographs, all showed that Anthony Braithwaite's claim about what he observed was false. In fact, the cell phone records strongly suggest that Braithwaite was not even in Atlanta at the time of the murder, because there were 18 calls or attempted calls between the co-defendant Mouchette and Braithwaite on New Year's Eve day and early evening, when Braithwaite claimed at trial that the two men were together constantly. So if they were together, why were they calling each other with such regularity that day? The medical examiner's testimony, I think, has been greatly disconstrued. She acknowledged the weather in Atlanta when she opined that Mr. Johnson had been dead at least a day, and she took that into account. The investigator said that the body was in mild to moderate rigor on January 4th, and within 20 hours, which is the time that elapsed until the autopsy, the body was in a refrigerated cooler consistently, which was much colder and consistent low temperatures than outside, and the body advanced from mild to moderate to full rigor. So using that evidence, plus the medical examiner's testimony, that maximal rigor usually takes only 12 hours, the conclusion is inescapable that Mr. Johnson was killed sometime on January 3rd, probably in the early evening of January 3rd, because the witness at the company who first saw the body saw the body on January 3rd. And Mr. Mouchette wasn't even in Atlanta. Can I ask you to address your Brady claim? And I'd like if you could just explicate what it is about the tapes that you didn't receive until after the trial, how they would have supported your defense. Well, I think, Your Honor, you have to first put the calls in context, which is that this is extremely weak evidence of guilt in this case. The cooperating witness was much higher up in the gang than either of the defendants, but he was in prison when the informant was killed. So there was no evidence that the defense had to suggest that he might have been responsible for orchestrating the murder. He issued a rap song or wrote a rap song where he glorified the murder and was clearly very happy about it, but there was no evidence to back it up. The calls revealed that while he was in prison, he had a secret relationship with another gang leader much higher up than the defendants in a different set, and that they corresponded together through their mutual contact, which was Grant's girlfriend and Sidebite's sister. And that provided some evidence that they had, in addition to the fact that Larry Padgett, the head of all of the Crips, was unhappy with Grant after the murder, suggested since Padgett had, clearly the government's witnesses testified, he had told people not to harm Padgett, that Grant went behind his back to arrange this to the government. So that's the significance of the calls and the statements by another cooperator in a different case, Jonathan Victor, which is not great material because the government didn't have it at trial, but that witness confirmed a lot of the points that were made about Grant, that he did in fact murder people and order people to be murdered, and that it was only a big homie, unquote, in the gang who could order a murder, that the underlings were not allowed directive of someone over them, and Ramsey and Wuschett were not of that level. The other point I really want to underscore is that the motive for the murder that was portrayed to the jury was simply false. I have gone into that in great depth in my briefs, and I just will finish this part of the argument by saying that my reply brief demonstrates that practically none, and I mean none, of the arguments that are made on appeal about Braithwaite or the actus reus were made to the jury or about the motive. And none of them were addressed by the district court judge, and none of them were addressed by the government on appeal. So this is not a case where you can say the jury heard all this and went the other way, or the district court judge wrote a very thoughtful opinion and addressed your points and ruled against you because neither of those things are accurate. Thank you. Thank you. You ready for me? Yes, we'll hear from counsel for Mr. Muschiette. May it please the court, good morning. My name is Stacey Van Malden. I'm representing Mr. Muschiette. As you sit here today and you consider this matter, please never forget this was not a RICO trial. This was not a conspiracy trial. The appellant never contested that he was once an A3 crip or that Mr. Johnson cooperated with the government. It's a nuts and bolts evidence case. I submit to you that a verdict garnered by playing fast and loose with the rules of evidence is unjust, and it can't stand because the entire point of our rules of evidence is to ascertain the truth and secure a just determination. That's exactly what Rule 102 says. When you apply the rules improperly and it causes prejudice, it is an abuse of discretion and a new fair trial must be granted. Nuts and bolts. My very first issue, Rule 404B. How much 404B evidence do you need and what kind is proper in a one count retaliation murder trial? Not RICO, not conspiracy. The only thing these jurors had to decide was whether these defendants committed the crime. Past membership, cooperation, not contested. What was the purpose of that evidence? It was admitted to show background and relationship between the witnesses and the defendants. And I know you're familiar with the rules. And this just doesn't fit. What about the argument that this was necessary or relevant to showing the retaliatory motive, to show the relationships among the various individuals and to prove up the retaliation? I don't know that showing armed robberies, using zip ties, drug dealing, selling crack in ecstasy, barroom brawls, having large amounts of cash, using multiple cell phones, cheating on your wife, proves up anything regarding the retaliatory motive. In fact, the government only says that the retaliation only came into existence on December 30th. So showing crimes that took place over the past few years, it's not 404B evidence is supposed to support it. To show Johnson's relationship and why they were so angry at him that they wanted to kill him. Because he had been so deeply involved with them and all of these other activities. At least that's the argument. It's an argument, and that would be great in a RICO case. They have to have a purpose. It's a weak correlation to the crime on trial, to quote you, Your Honor. It's a weak correlation. There's the steps that you need to show that they've gone from... Because not all of these crimes also were with Mr. Johnson. Not all of these crimes. For example, the car stop. Three different witnesses for a $16,000 money seizure. All this is showing is that these defendants are bad guys. And bad guys should be convicted. That's how I would answer that question. To even say that it's a conspiracy, you need to show... For each time, you can't just have evidence come in because, oh, well, they're co-conspirators. You need to identify which conspiracy you're talking about. And then you need to prove it up. You have to say, okay, the object of this particular conspiracy was... And then you prove it up and you need to corroborate. And Mr. Johnson, through Agent Campbell, and Mr. Grant do not corroborate Braithwaite. And he's the only one who's giving this evidence regarding Mr. Mouchet. The acts themselves, they're not similar to the charge conduct. And as I said, they have a weak correlation to the crime charged. And then when you balance that against the nearly non-existent evidence that the defendants actually committed the crime, the balance is... When you say non-existent evidence, you have a witness who testified, an eyewitness who testified that he saw Mr. Mouchet shoot Johnson. And I would submit to the court... I don't know how you can say there's no evidence. But when you have that testimony... Well, I'm going to say objective evidence, like the medical examiner, for example. The medical examiner says that the death took place 8 to 20 hours before the autopsy, 12 to 24 hours before discovery, was dead about a day at the time. And we know beyond any doubt that Mr. Mouchet was no longer in Atlanta at that time. And I'm already out of time. Can I just ask if you could... I mean, if we conclude that the jury needed to be told some amount of the background between the individuals to go to motive and to explain the nature of the urge to retaliate because of the gang's norms, that they were going to learn something about the past history of the defendants and the witnesses. Where in particular do you think the district court went over the line in admitting 404B evidence that really didn't survive any sort of balancing test? Any evidence that doesn't involve Johnson, for example. Most of it certainly doesn't involve... I don't know that there was anything other than this alleged arrest of Braithwaite at the Stash House that actually involves Johnson. There's nothing. The armed robberies are not with him. The zip tie robbery, the drug dealing with Nutt and these other people, they don't involve Johnson. And that is a reason why it really has nothing to do with this case. When you see... The way that I set up the facts for you in the brief is, you know, this is the stuff which is like two or three pages that actually is kind of direct evidence. And then this is all the other stuff. And because of the way it went in and because of this corroboration and because Johnson's permitted to testify through Campbell, which is the Giles case right there, there's just... When you add them all up and then when you look at the decision, the Rule 29 decision, and if you look at my last point, each of these items of evidence that are relied on by the trial court in upholding the verdict of the jury are all the things where there's so many... They're skipping around. We need these rules of evidence. We need to go through the tests. You need to take the time to make sure that each of the rules, that each piece of evidence satisfies one of our rules of evidence because that's why we have them. We have them so that we reach the truth. Can you just address very briefly what was wrong with the admission of Johnson's proffer under 804B6? I mean, it does seem to say that statements offered against a party that wrongly caused the defendant's unavailability as a witness with intent come in. There seems to be an applicable hearsay exception. So what am I missing? Okay. There's two things. First of all, the government spent the entire trial saying that the reason that Mr. Johnson was killed was in retaliation for ratting out Larry Paget. So that's one, and that's disingenuous, let's say. The point of that rule is, let's say you have a drug trial and the defendants kill a witness because they don't want him to appear at that trial, then it's okay. The evidence comes in. But Giles v. California, you don't kill somebody so that they won't testify at their own murder trial. And that's the difference. And that's why his testimony, uncross-examined, is hearsay without exception. Okay, we'll hear from the government. May it please the court. My name is Elizabeth Geddes, and I'm an assistant United States attorney here in the Eastern District of New York. The appellants in this case, Rodney Muschiette and Malik Ramsey, murdered Nashua Johnson on December 31, 2008, in retaliation for his cooperation with federal law enforcement. There was more than sufficient evidence to sustain both defendants' convictions, and the district court did not abuse its discretion when it denied the defendants' motions for new trials. Let me first start with the evidence that the defendant, Malik Ramsey, aided and abetted this murder, and show how different this case is from the case cited by the defendant, Delgado. The phone records show that immediately after Malik Ramsey speaks with Larry Padgett's sister, Tanya Padgett, his very first call is to the defendant, Rodney Muschiette. They speak for approximately 10 minutes, and then there's a second call between Malik Ramsey and Tanya Padgett. And then immediately after that phone call, there's a subsequent telephone call from Malik Ramsey to Rodney Muschiette. And after that, as soon as they get off the phone, there's a phone call from Malik Ramsey in London to Marlon Cole, also known as Nut. The jury was permitted to infer that in those telephone calls, given the proximity of those calls to the calls with Tanya Padgett, and keeping in mind what Tanya Padgett told her brother, Larry Padgett, about Squingy, a reference to Malik Ramsey, having been so upset when he found out what Padgett had said at his sentencing hearing, referencing that Nashua Johnson had cooperated against Padgett and the greater H. Ray Cripps. The jury was permitted to infer that in those telephone calls, Malik Ramsey was passing along the message as to what Larry Padgett said, and ordering the defendant, Rodney Muschiette, to carry out the murder. In addition to that, the jury was permitted to infer that he was putting in place a plan to have Nut, Marlon Cole, make sure that it got done. And this is absolutely supported by the defendant's own words, Malik Ramsey's own words to Anthony Braithwaite, when, as Your Honor previously observed, he said, I'm the one that makes sure it got done. That is so different from what happened in Delgado. He made sure it got done, and he then goes on to say, I'm the one to make sure that Nut got it done. And contrary to Ramsey's counsel's argument, Marlon Cole does end up playing a critical role in this murder. As Anthony Braithwaite testified, they're driving on New Year's Eve, and it was in a caravan of three cars. And the first car is driven by Marlon Cole or Nut. And the murder plan comes into play when Marlon Cole swerves his car off the road. And only then does Rodney Muschiette follow suit and carry out the murder. Based on that, there was more than sufficient evidence to show that Malik Ramsey contributed. He intended for the murder to happen, and he, in fact, contributed to it. And there's more when you see Malik Ramsey's statements well after the murder, but unequivocally saying what he thinks should happen to people who cooperate. Can I just ask, you know, on the sequence of phone calls, including with the sister, you have transcripts of some of the calls, right? Some of them were intercepted? No. So the telephone calls between individuals who were in prison, so the calls between Larry Padgett and his sister were intercepted because they were recorded from the prison. That's what I'm looking at. So you have transcripts of some of the calls and then the others, you just know that there were calls without knowing the content. That's correct. We don't have the content of those calls. But we do have given the proximity. I mean, it's government exhibit 255, which is in the record as a nine at the Joint Appendix 978 is a chart of the telephone calls. And the order of the calls is really compelling insofar as it shows that, you know, at 3.06 p.m. there's a two minute call between Ramsey and at 3.08 p.m. So immediately after that, Ramsey calls Mouchette. Then again, they speak for 10 minutes, 3.20. There's the call that lasts seven minutes with between Tanya Padgett and Malik Ramsey. They hang up the phone 3.27. What does Ramsey do? He picks up the phone and he calls Rodney Mouchette. So given that you have some of the content of the calls based on what Tanya Padgett tells his her brother, the jury was permitted to infer what happened, even if we don't have the content. And can I just ask about the Brady issue for just a moment? So these clause of the defense says that if they'd had access to these calls from prison by grant, they would have been able to use them to develop the alternative theory. Also, based on phone calls that were not recorded, that the true perpetrator was a side bike and that the deprivation of the ability to make this claim constituted a Brady error. I mean, the deprivation of this evidence constituted Brady error and requires reversal. Do you mind addressing that? Of course, Judge. So as the district court found, who, of course, presided over the trial and listened to all of the evidence and carefully and thoughtfully reviewed the defendant's Brady claim, there simply was no evidence to suggest that side bike actually participated in the murder of Nashua Johnson. It's speculation by the defendants and the defendants were on notice that side bike was a leader of the G Stone Crips. They were on notice that other G Stone Crips may have been at Atlanta when Nashua Johnson was murdered and the defendants did not make use of any of that. And maybe most importantly, they were absolutely on notice of Godfrey Grant's motive to carry out the murder and his songs, his rap songs, where he gleefully celebrates the murder of Nashua Johnson. And they didn't make use of any of that. Simply put, the new evidence was not new. It was not in so far as it was not new. It wasn't suppressed and it had would have had no there was no reasonable probability that it would have had an effect on the outcome here. The evidence that was deuced at trial, contrary to what the defendants or the appellants are saying today and after trial, was frankly very compelling testimony by Anthony Braithwaite that was supported by very compelling circumstantial evidence in the form of the telephone records, the cell site evidence, Rodney Muschiette's denial to both Nashua's mother and Agent Campbell upon his arrest that he was in Atlanta and all of the other evidence that the district court thoughtfully laid out in its denial of the brief. Very briefly, the government disagrees that the ballistics evidence or medical examiner's evidence undermines this case in any way, as the district court highlighted in its denial of the motions. And for those same reasons, I'll touch upon the argument made by Muschiette's counsel that the 404B evidence was improperly admitted. The government disagrees. Here, the evidence was admitted to show both the motive for the defendants that the appellants here had to participate in the murder. And also, significantly, why the defendants would carry out the murder with and in front of the other individual's presence, to include Country, Terry Farley, to include Marlon Cole or Nutt, as well as and significantly, Anthony Braithwaite. And so the district court properly listened to the evidence that the government sought to admit, balanced it and correctly determined that it was proper to do so. There was no abusive discretion in his doing. The district court, again, listened to Anthony Braithwaite testify about what transpired. And among that testimony, Anthony Braithwaite says that Rodney Muschiette told him that Nashwa Johnson would have destroyed their lives. Based on Anthony Braithwaite's testimony alone, there was more than sufficient evidence to show that the defendants wrongfully killed Nashwa Johnson, and they did it with the intent to exclude his testimony at a future trial. Therefore, the prongs of 804 B-6 are satisfied and the defendants forfeited their right to challenge that submission. If your honors have no further questions, we'll rely on our brief for the remainder of argument, should we have any, and we would ask that the court affirm the district court's convictions here. Thank you. We'll hear rebuttal. Yes, your honor. The prosecutor has just gone through their version of the motive for the murder, which is Ramsey and Muschiette needed documentary proof that Johnson was cooperating and the proof was provided through the government sentencing letter in Padgett's case and Padgett's remarks at sentencing. They put in just a couple of excerpts of both things, but if you look at all the documents surrounding Padgett's case and all of the sentencing remarks that he made, it's clear that that was not the motive. Padgett pled guilty without any involvement by Nash. There was a lot of evidence that he'd been involved in shooting the person. He pled guilty months before he was sentenced. And he specifically said at sentencing that Nash had nothing to do with his case. The judge imposed a draconian over guideline sentence of 10 years on Padgett, which clearly Padgett was not happy with and was fighting. And his sister, Tanya, was at the sentencing and heard that. He didn't dump on Johnson and that the judge said, you know, I'm going to give him a sentence regardless of any of the claims that the defense is making, because I think it's warranted. It's a serious crime and he has a serious record. So the fact that Tanya called Ramsey, that is what she would have reported. My brother just got hit with a 10 year over guideline sentence. Ramsey was a gang member. Nutt was a gang member. There were a lot of gang members and they would all be interested in knowing and upset about knowing that Padgett, the leader, had just gotten this big sentence. So it had nothing to do with the immediate decision that they were going to have to kill Johnson. Plus, they had documentary proof in May 07 that Johnson was cooperating as Grant and Padgett knew. They had the obstruction of justice complaint, which made it absolutely clear. So if anybody needed documentary proof, it existed for months and months and months and months before the murders. So the motive theory is simply false. But the jury didn't have the tools with which to figure that out. And that explains why Tanya called and why Ramsey called some other people. I also note that Nutt was not charged with this murder. Padgett was not charged with this murder. So, you know, I can't speculate as to why, but if Nutt was up to his teeth in it and Padgett was the one that directed it, one would think that both of those individuals would also have been indicted. With respect to the Brady calls, again, Judge Livingston, the standard is not that the defendant has to prove post conviction that the missing evidence that they now have would have affirmatively proved the defendants were innocent. This evidence that was given substantially forwarded the defense theory that the defendants were not responsible for the murder. And I also want to emphasize that it's only because of the government's negligence. And I say that charitably. At best, it was negligence in not producing these calls for use at trial and allowing the defense to fully investigate them because the prosecutor was asked by the magistrate judge to specifically go to the BOP and ask if these calls still existed. And she reported back to the magistrate judge, no, they no longer have them. And yet they were in continuous possession of the facility where Grant was incarcerated in Braidwell. So they should have been produced. And to have the government suggest that they were no big deal and they wouldn't have made a difference is frankly disappointing. And I just want to, on the prosecutor's contention that the ballistics evidence was not inconsistent with Braithwaite, I asked the panel to look at appendix page 878 and 879, as well as 903, which shows that Braithwaite's claim that Matt Johnson was chased by Mouchette from Beaufort Highway toward Liddell Drive, where he was ultimately found dead, is completely inconsistent with the medical evidence, which shows that Johnson was chased from Liddell Drive toward and quite a distance from Beaufort Highway. And so it's completely inconsistent with his entire testimony about what he saw on the shoulder of the highway. And there's many other things and documentary evidence that I've put in the appendix that also show that his claims are simply not true. Thank you. Oh, I, are you ready for me? Yes, please proceed. Yeah, I wanted to just briefly address the government's very argument about this consciousness of guilt about Mr. Mouchette, you know, saying he wasn't in Atlanta. The actual evidence, again, evidence in this case is that Agent Campbell asked Mr. Mouchette, were you in Atlanta around the time of Nash's murder, Mr. Johnson's murder? And I submit to this court that if that were asked in a courtroom, that my form of objection would be sustained. What do you mean around? And the government argued in their summation that the question was, were you there on New Year's Eve, which was not the evidence in the case. So this is not a false exculpatory statement. Also, I asked the court to consider, did the jurors believe Braithwaite? Did they believe him because he was corroborated on all these other things that didn't have to do with the crime? Or did they not believe him but convict anyway, because these were bad guys? If the rules of evidence are here and we use them to ascertain the truth and secure just determination, the rules are essential to a fair trial. With all due respect, what happened below was an evidentiary nightmare. It resulted in grave injustice. This verdict cannot stand. Dismissal would be optimal, but a new fair trial will do. Thank you for your attention. Thank you so much. Thank you all, and we will take the matter under advisement. Very helpful.